UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CARLY KATTERINE GUERRERO )
QUINTERO, )
 )
    Petitioner, )
 )
v. )
 )    NO. 3:26-cv-00692
CHRISTOPHER BULLOCK, in his )
official capacity as Director of Enforcement )    JUDGE RICHARDSON
and Removal Operations for the )
New Orleans Field Office of ICE, )
MARKWAYNE MULLIN, in his )
official capacity as the Secretary of the )
U.S. Department of Homeland Security, )
DEPARTMENT OF HOMELAND )
SECURITY )
 )
    Respondents. )

**<u>ORDER</u>**

Pending before the Court is the "Petition for a Writ of Habeas Corpus (Doc. No. 1, "Petition") filed pursuant to 28 U.S.C. § 2241 by Petitioner, Carly Katterine Guerrero Quintero. As appears to be undisputed, Petitioner was arrested (apparently on state charges) in Davidson County on May 17, 2026, but the charges were dropped three days later. (*Id.* at 2). As also appears to be undisputed, Immigration and Customs Enforcement ("ICE") lodged a detainer with Davidson County authorities before her release—which presumably resulted in her remaining in the custody of Davidson County authorities even after the dismissal of the charges—took her into custody on the day the Petition was filed, i.e., May 22, 2026. (*Id.*). Via the Petition, she seeks, among other things, immediate release or a bond hearing, and a declaration that her detention is unlawful. (*Id.* at 13). On June 5, 2026, Petitioner filed a "Motion for Issuance of Order to Show Cause," (Doc. No. 6, "Motion"), which the Court granted via order dated June 9, 2026 (Doc. No. 9, "Show Cause

Order"), and therein ordered Respondents to, within seven days of the Show Cause Order, "show cause, if any, why the writ of habeas corpus should not be granted." (*Id.* at 1).

On June 16, 2026, Respondents filed a "Response to Court's Order and Petition for Writ of Habeas Corpus." (Doc. No. 10, "Response"). Respondents' sole ground for opposing the Petition is that "service has not been perfected pursuant to Fed. R. Civ. P. 4 [as] Petitioner has not provided proof that the Attorney General of the United States has been served as required." (Doc. No. 10 at 2).[1] On June 18, 2026 (i.e., today, and not before today), Petitioner filed a "Declaration of Julio Colby," (Doc. No. 11), declaring under penalty of perjury that "a copy of the Complaint and Summonses . . . [was mailed] to the Attorney General via Fedex" and, as of June 18, 2026, was "delivered and signed for." (*Id.* at 1-2). Accordingly, the Courts finds the sole ground on which Respondents opposed the Petition—i.e., that "service has not been perfected pursuant to Fed. R. Civ. P. 4 [as] Petitioner has not provided proof that the Attorney General of the United States has been served as required"—to have become inapplicable. (Doc. No. 10 at 2).

In the Response, Respondents concede that the Sixth Circuit's ruling in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) controls. (Doc. No. 10 at 2). In *Raycraft*, the Sixth Circuit affirmed multiple district courts' holdings that detentions without bond hearings under 8 U.S.C. § 1225(b)(2)(A) were unlawful and violated due process. 175 F.4th at 732, 734. The court reasoned that 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme, which does not provide for individualized bond hearings, does not apply to people who are not seeking admission or lawful

---

[1] Respondents assert that all respondents other than Christopher Bullock, the ICE Field Office Director and "detainee's immediate custodian," should be "dismissed from the Petition." (Doc. No. 10 at 1, n.1). The Court agrees but does not find this point otherwise relevant to the substantive analysis of the Petition and to whether it should grant the relief requested in the Petition. However, the Court will construe Respondents' assertion that Christopher Bullock is the "only proper defendant" in the present habeas petition as, among other things, an acknowledgement that (i) Petitioner is, in fact, in ICE custody and (ii) Christopher Bullock is Petitioner's "immediate custodian" in ICE custody. (*Id.*).

entry into the United States, because they are already in the United States. *See id.* at 732. The court also concluded that detention without a bond hearing in those circumstances constitutes a deprivation of liberty in violation of the Due Process Clause. *See id.* at 734.

Petitioner Quintero was already residing in the United States when she was taken into ICE custody. (Doc. No. 1 at ¶¶ 1, 4).[2] Accordingly, and consistent with *Raycraft* (not to mention the great majority of district courts (albeit not the great majority of courts of appeals) that have ruled on this issue), the Court finds that Petitioner's detention without a bond hearing is unlawful and constitutes a deprivation of liberty. Of the (many) courts finding likewise, some have *conditionally* granted the writ, i.e., have ordered the petitioner's immediately release if, after a specific (small) number of days, the petitioner is not granted a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge. *See, e.g.*, *Magdaleno v. Raycraft*, No. 1:25-CV-1706, 2025 WL 3637413, at *9 (W.D. Mich. Dec. 16, 2025) ("The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the alternative, immediately release Petitioner from custody.") But others have ordered the petitioner's immediate release. *See Yao v. Almodovar,* 813 F.Supp.3d 461, 477 (S.D.N.Y. 2025) (collecting cases). The Court here opts for the latter approach, finding—while acknowledging that the issue is debatable—that because Petitioner's rights to a bond hearing under § 1226(a) have been denied, "[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and that although Petitioner's] release today cannot cure [her]

---

[2] As this allegation is uncontested by Respondents and supported by, among other things, the exhibits to the Petition (Doc. Nos. 1-1 and 1-2), the Court considers this allegation as conceded by Respondents and treats it as true.

loss of liberty since [the day she was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." *Id*.[3]

That leaves just one final issue: the time by which Respondent must—absent some conceivable stay of the instant order—comply with this order's directive to release Petitioner. On this issue, the Court perceives that it has substantial discretion, and that discretion is influenced by multiple facts: (i) this order is being entered after 6:00 p.m. on the evening prior to a three-day federal holiday weekend; (ii) Petitioner did not do what it needed to do to obtain the relief directed by this order—i.e., show proof of service of process—until today; (iii) there is no way for this Court to order Petitioner's *immediate* release without almost surely substantially encroaching on the holiday plans of numerous federal employees—those responsible for reviewing and interpreting this order and deciding exactly how and when to respond to it, and those who are not responsible for implementing the decision about how and when to respond to it—who are not responsible for the fact that this order could not be issued until after 6:00 p.m. prior to a three-day federal holiday weekend; and (iv) as explained above, the Court's order *otherwise* is aggressive in dictating Petitioner's prompt release (as opposed to continued detention pending a bond hearing).

---

[3] The Court notes that this conclusion is further supported by the circumstances in this present case. In a filing dated May 20, 2026, with the Court in *Tejada-Perez v. Bullock et al*, Case Number 3:26-cv-00612, a separate 28 U.S.C. § 2241 proceeding, counsel for Respondents previously acknowledged that *Raycraft* controls the outcome of proceedings like the instant one. *See* Respondent's Response to Petitioner's Petition for Writ of Habeas Corpus, *Tejada-Perez v. Bullock et al,* No. 3:26-cv-00612, Doc. No. 9 at 1-2 (M.D. Tenn. May 20, 2026).

As Respondents have had nearly four weeks, since the *Tejada-Perez* filing, to take steps in furtherance of obtaining for Petitioner the hearing Respondents have previously acknowledged to this Court is due to Petitioner Quintero and others similarly situated, the Court sees no reason to provide Respondents any more time to do so—especially when such additional time necessarily comes at Petitioner Quintero's expense.

None of this is to say that Respondents were not within their rights to: (i) deny that they were proper Respondents, if in fact they were not the proper Respondent; or (ii) insist upon proper service before conceding that relief in this case was appropriate.

Under these circumstances, the Court in its discretion is inclined to, and will, order that Petitioner's release occur by 2:00 p.m. on Monday June 22, 2026.

**<u>CONCLUSION</u>**

For the reasons stated herein, the Court DISMISSES the Petition (Doc. No. 1) as to all Respondents other than Christopher Bullock, and the Clerk shall terminate all of those other Respondents as respondents. The Petition (Doc. No. 1) is otherwise GRANTED, except as to Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, for which a separate motion must be made.[4] Respondent SHALL immediately release Petitioner from custody, in no case later than 2:00pm Central Time on June 22, 2026, with all possessions, property, and documents Petitioner had at the time she was taken into custody.

The Court will (separately) enter a judgment granting the writ unconditionally, subject to the timing parameters of such relief specified above.

The Clerk is directed, once such judgment is filed, to enter judgment for purposes of Rule 58 and close the file.

IT IS SO ORDERED.

*Eli Richardson*
_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[4] "A claim for attorney's fees and related nontaxable expenses must be made by motion." Fed. R. Civ. P. 54(d)(2)(A). *See also* Local Rule 54.01.